34 C.C.P.A.(Patents)

## In re RUSSELL.
### Patent Appeal No. 5196.

Court of Customs and Patent Appeals.
July 9, 1946.

Rehearing Denied Sept. 30, 1946.

O'CONNELL and BLAND, JJ., dissenting in part.

Harris, Kiech, Foster & Harris and Ward D. Foster, all of Los Angeles, Cal. (Francis D. Thomas and Harry W. F. Glemser, both of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard Miller, of Wilmington, Del., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming decisions of the Primary Examiners of Divisions 14 and 32 rejecting claims 14, 16 to 21, inclusive, 23 and 24 of an application for a patent on "Filter Medium and Method of Production." No claims were allowed. Claims 16 to 21, inclusive, are method claims and were rejected by the examiner of Division 14. Article claims 14, 23 and 24 were rejected by the examiner of Division 32.

The method claims were rejected as not defining invention over any one of the following cited art: Schaefer (British), 231,199, November 5, 1925; Darier (French), 483,770, May 15, 1917; Darier et al. (French), 492,235, March 11, 1919; Skelton, 1,944,279, January 23, 1934; Robinson, 2,072,382, March 2, 1937.

The article claims were rejected as unpatentable over the Skelton patent in view of the two French patents.

In view of our conclusion hereinafter set out, it is not necessary to quote any of the method claims. Claim 14 is illustrative of the subject matter of the article claims and reads as follows: "14. A filter of the character described for use with internal combustion engines subject to the vibration and shock of vehicle operation, said filter having in combination: a filter housing providing a filter chamber; and a mass of short discontinuous lengths of relatively thin and relatively flexible drawn wire formed into tortuous three-dimensional patterns of length less than the smallest dimension of said chamber, said formed lengths of wire being intermeshed and being interlinked by turns threaded to form therein a coherent resilient filamentous body with substantially no freedom for relative movement of the individual filaments."

The alleged invention relates to an air filter of the well known oil bath self-washing type, and the method of making it. Its purpose is to remove dust particles from air which is taken in during the operation of an internal combustion engine. The filter comprises a great number of helices of slender wire in cylindrical, conical or hourglass shape. The helices are deposited one after another in a casing of predetermined form. A jolting action is imparted to the mass as it is being formed so that the helices entirely fill the container. Then pressure is applied so that the helices are compressed into a desired size. Because of the jarring and compressing they become interlaced into a relatively solid mass for the reason that the ends of the helices act as hooks.

The Skelton reference relates to an air cleaner for internal combustion engines and discloses a filter mattress or pad of steel wool compressed to desired density through which the air passes for cooling the engine, the air losing the particles of dirt generally found in the atmosphere.

The Darier patent, No. 483,770, discloses the washing of gases and refrigeration of gases and liquids. It discloses bodies made of spirally twisted wires which are heaped pell-mell or otherwise into the column portion of an apparatus in which vapors or contact of gases and liquids takes place.

The Darier et al. patent, No. 492,235, is for a "Process for removing the dust from and purification of gases and air." The filter apparatus contains a mass of small metal helices resembling in form

those shown in the patent No. 483,770. It is stated in the specification that "These soleneids [helices] are coated with a suitable viscous liquid the means of applying and regenerating which are reserved."

The Board of Appeals in its decision dated February 7, 1945, cited all of the references in the duel prosecution of the case. With respect to the article claims it followed the reasoning of the Primary Examiner, but deemed it unnecessary to discuss the method claims "since the manipulative steps defined therein appear to be conventional."

In his reasons of appeal to this court, dated March 26, 1945, appellant assigned no reason alleging error in the rejection of the method claims on the Schaefer patent. On November 15, 1945, counsel for appellant for the first time filed in this court a motion for leave to amend the reasons of appeal by adding the Schaefer patent.

■ Section 4912, R.S., 35 U.S.C.A. § 60, provides that when an appeal is taken to this court the appellant shall so notify the commissioner and file in the Patent Office his reasons of appeal specifically set forth in writing within such time as the commissioner shall appoint. The time appointed by the commissioner under that section is set at 40 days from the date of the decision appealed from by Rule 149 of the Patent Office, 35 U.S.C.A.Appendix. The motion to amend must be and is denied because it attempts, after the expiration of the appeal period, to add a new issue. Therefore it is not proper to consider the rejected method claims on their merits, for the reason that no error has been alleged in the notice of appeal in the rejection on the Schaefer patent.

The examiner, in rejecting the article claims, pointed out that the French patent No. 492,235 suggested using as an air filter material "a mass of small metallic solenoids resembling in form and cross section those indicated in Patent No. 483,770."

The helices or spirals of the French patent when prepared as hereinbefore mentioned are placed between metal lattices or other restraining means to form a mass through which a gas stream to be purified is passed by either suction or pumping.

■ The Skelton patent clearly and explicitly teaches the compression of the filter means and the regulation of the compression. To use a mass of helices such as disclosed by the French patent in an intake filter such as that shown by the Skelton patent, in our opinion does not involve invention. While claims 23 and 24 do not limit the use of the filter to an internal combustion engine, they were properly rejected for the same reasons as claim 14.

■ The affidavits on file indicate that the device of appellant is very efficient and enjoys great commercial success. If there were any doubt concerning the patentability of the rejected article claims, the affidavits, of course, might be considered in tilting the scale in favor of their patentability. However, we have no such doubt, and therefore cannot consider the affidavits as imparting patentability to the rejected article claims.

For the reasons contained herein the decision of the Board of Appeals is affirmed.

Affirmed.

O'CONNELL, Associate Judge (dissenting in part).

For the purpose of final rejection of the claims for article, the examiner of Division 32 relied upon a plurality of references none of which, with the exception of the patent to Robinson, was subsequently mentioned or relied upon either by the examiners or by the Board of Appeals. In fact, the references cited here, with the exception of Robinson, were cited for the first time after the final rejection of the claims for article. It expressly is admitted by the Board of Appeals in its rejection of the claims for article "that the prior art does not disclose the step of compressing the spring-like elements in the manner contemplated here."

Viewed in the light of the facts of record, the cited references fail to disclose or suggest that appellant's article might be constructed by combining certain elements of the references, and what appellant has done was not obvious to any person skilled in the art. Therefore, I am constrained to hold that claims 14, 23, and 24 involve invention and are patentable. In re Huntzicker, 90 F.2d 366, 24 C.C.P.A., Patents,

1325; In re Stover, 146 F.2d 299, 32 C.C.P.A., Patents, 823. See also In re Kaplan, 110 F.2d 670, 27 C.C.P.A., Patents, 1072, 1075.

There is no device disclosed or suggested either by Skelton or by any of the subsidiary references of resilient wire elements capable of not only withstanding shock without deformation or rupture but also of recovering their size and shape after deformation especially by compressive stresses. That device, however, is defined by the appealed claims for article.

The patent to Skelton provides an air cleaner with a tubular casing for internal combustion engine carburetors, and "means for holding the dirt collecting medium in a compact condition and under sufficient compression to form tortuous paths for the air as it passes into the devices." The pertinent feature of Skelton is described in his specification as follows, numerical references to the drawings being here omitted: "* * * A pair of spaced screens are located in the cup-shaped member and separated by a mass of cleaning or filtering material such as steel wool. The cleaning unit is detachably secured to the casing by the stem and thumb bolt which may be adjusted to produce a desired degree of compactness in the filtering medium."

Robinson relates to the art of contacting two liquids differing substantially in specific gravity and has particular reference to a vertical tower used for the extraction of oils by means of selective solvents. The construction of Robinson, as far as pertinent to the question here in issue, is described in the specification as follows, numerical references to the drawings being here omitted:

"* * * My invention is concerned with the intermediate portion of the tower, which is normally either empty, packed with some type of filler or equipped with baffles of one sort or another.

*　　*　　*　　*　　*　　*

"* * * The packing may be of any known type such as pieces of ceramic material, Raschig rings, etc., but I prefer to use small metallic springs, as shown, since I find this type of packing material highly satisfactory. The layer of packing may be of any desired height, for instance, from half the diameter of the tower to the diameter of the tower. Instead of using a packed space for the contacting portion of each of my stages, I can use a series of baffles, or even an empty space, but I strongly prefer to use the packing as described."

The two French patents were described by the examiner as constituting in effect a single reference. According to the statement of the applicant for the French patent No. 483,770–

"The object of the present invention is specifically a hollow element facilitating the contact of liquids and gases in apparatuses for fractional distillation, for washing gases and refrigerating gases and liquids, this element being constituted by a wound body, wound so as to form convolutions at least a portion of which do not touch one another.

*　　*　　*　　*　　*　　*

"To utilize these elements in distillation apparatuses or apparatuses for washing or refrigeration they are heaped up pell-mell or otherwise in the portion of the apparatus, for instance a column, in which the condensation of the vapors or the contact of the gases and liquids takes place."

The British patent to Schaefer discloses a plurality of coils in metallic packing or filling bodies for distillation towers. It is regarded as cumulative with Robinson and was not discussed in the decision of the Board of Appeals.

It is noted that each of the cited references discloses elements to make filter bodies, but none defines the precise article called for by the claims on appeal. The form of the wire elements in Skelton's filtering pad differs from the interlinked and intermeshed mass of resilient coils, or other three-dimensional springs, of wire elements having hooked ends as disclosed by appellant.

Robinson discloses the use of pieces of ceramic material, but prefers the use of small metallic springs, as packing material. These springs are indicated in the drawing but not further described in the specification. The inference to be drawn from Robinson's patent is that the towers are

several feet in diameter and the material in the filtering pad is not packed in the sense of being compressed, but is loosely placed in the tower. Furthermore, the wire elements in the French patent while they are "heaped up pell-mell," there is no teaching of compression. On the contrary, the coil structure is wound "so as to form convolutions at least a portion of which do not touch one another."

As correctly stated in the brief of appellant—

" * * * At best, the prior art discloses similar features only in separate patents where they are not arranged and do not coact to produce appellant's results.

 *  *  *  ·*  *  *

"The new results are found in the substantial elimination of freedom for relative movement of the spring filaments and consequent elimination of frictional wear which would otherwise cause fracture and formation of numerous small fragments due to the vibration and pulsation effects produced by the mechanisms upon which the filters are employed. These new results arise from the *resilient* characteristics of the compressed mass of springs, because the compression maintains firm contact between contiguous filaments at all times."

An auditor's certificate and an affidavit are properly before the court in which appellant submits facts and supporting figures to establish not only unexpected results but also proof of commercial success.

On the question of commercial success, the manufacture and sale of more than 190,000 of appellant's cleaners at a sales value of more than $1,000,000 is shown, with unfilled orders on hand of the approximate value of $400,000. An extensive use of appellant's device by the War Department of the United States as well as the British army is also shown. The facts submitted by appellant on the question of commercial success are not contradicted, and it clearly appears from the record that appellant's combination is new, useful and commercially successful.

For the reasons hereinbefore stated, the decision of the Board of Appeals should be reversed as to claims 14, 23, and 24.

I am authorized to state that Judge BLAND joins in this dissent.