**CONSOLIDATED TRIMMING CORPO-RATION, Appellant,**

v.

**Florence F. LOUDON, Appellee.**

**No. 12853.**

United States Court of Appeals
District of Columbia Circuit.

Argued March 12, 1956.

Decided Nov. 8, 1956.

4. United States v. Union Trust Co., 1955, 350 U.S. 907, 76 S.Ct. 192.

**34**

Mr. Leonard L. Kalish, Philadelphia, Pa., with whom Mr. Albert H. Kirchner, Washington, D. C., was on the brief, for appellant.

Mr. William C. Conner, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of Court, with whom Mr. Miles D. Pillars, Washington, D. C., was on the brief, for appellee.

Before PRETTYMAN, FAHY and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a patent case, involving alleged infringement. Mrs. Florence F. Loudon is the holder of U. S. Patent No. 2,672,194, entitled "Supporting Means for Curtains and the Like." The patent covers a tape which is applied to the top edge of a curtain or drape, together with a form of hook which fits into pockets in the tape in such a way as to form the drape into pleats and folds. She caused her attorneys to send letters to numerous department stores, charging that her patent was being infringed by tape and hook combinations being manufactured by the Consolidated Trimming Corporation, and demanding the discontinuance of the sale of "devices which constitute infringements" of her patent. Consolidated thereupon filed suit in the District Court seeking a declaratory judgment that Mrs. Loudon's patent is invalid and is not infringed by Consolidated's product. Mrs. Loudon filed an answer but no counterclaim. After a trial the court concluded that plaintiff (Consolidated) had the burden of proving—but had not proved—its allegations that the patent in suit is invalid, that the patent is unenforceable, and that it is not infringed by plaintiff's products. The court further concluded that defendant's patent is presumed to be valid and enforceable unless the contrary is proved, that plaintiff is not entitled to any of the relief which it seeks, and that the complaint should be dismissed. Judgment was thereupon entered dismissing the complaint. On this appeal Consolidated argues that the burden of proof on the issue of infringement was on defendant Loudon, who had theretofore charged infringement, that the plaintiff's accused devices do not infringe the defendant's patent, and that in any event the patent is invalid, chiefly by reason of lack of invention in view of the prior art.

Under the better practice, a court's first concern in cases of this sort should be with the question of the validity of the patent allegedly infringed. Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945). In Mrs. Loudon's patent, Claims 1, 2, 3 and 4 describe the pleater hook; Claim 1, which is representative, reads as follows:

"For use with a drape having at its upper end a plurality of vertically extending horizontally spaced parallel tunnels or loops closed at their upper ends and open at their lower ends, a pleater and supporting means having four inverted U-shaped pocket engaging fingers of narrow width and having rounded

upper ends and disposed in a single plane and a hook located between the two center fingers and directed substantially at right angles to the plane of the fingers, said hook having the supporting portion thereof below the rounded upper ends of the fingers."

Claim 5, which describes the combination of the hook with the pleater tape, provides:

"The combination of a drapery curtain having a pleater pocket strip applied transversely at the upper hanging edge of the curtain and said pleater strip being provided with a plurality of spaced apart vertically extending parallel pockets open at their lower ends and closed at their upper ends, said pleater strip being secured to the curtain at its upper and lower edges to leave the lower ends of the pockets open and unobstructed, a supporting hanging and pleating hook member having four elongated upright non-penetrating pocket entering fingers of substantially the same length extending upwardly in closely disposed horizontally spaced relation, said fingers having blunt upper ends and being disposed in a single plane for insertion upwardly into the open ends of a plurality of said pockets, and a supporting hook portion located between the two middle fingers with the hook portion thereof disposed rearwardly and substantially midway of the length of said fingers, said fingers being more closely spaced and brought together than the spacing of the pockets whereby the fingers when fitted endwise upwardly into said pockets cooperate to draw the upper edge of the curtain together in a pinch-pleat arrangement with the several fingers each supporting a pleat through substantially the entire vertical extent of the pinch-pleat and supporting each pleat laterally and forwardly and rearwardly with the upper ends of the fingers in the pockets having closed upper ends supporting the curtain against sagging upon the fingers of the supporting member."

The essential principle of appellee's device is this: When prongs with little space between are inserted into pockets of a tape spaced at greater intervals, the prongs will cause the tape to bunch or pleat. And of course if the tape is sewn to a curtain and the prongs are equipped with a hook, proper insertion will cause the curtain to have pleats, and it may be hung. This idea was shown in 1904 by Knight's British Patent No. 24,-522 and in 1906 by Carr's U. S. Patent No. 834,188. The specification for Knight discloses: "A tape or webbing for heading of curtains and hangings having loops attached or interwoven at intervals of its length. A hook or suspender carrying three claws arranged in triangular form. By means of the hooks and tape or webbing aforementioned, the curtain or hanging to which they are attached is gathered into folds, or box pleats, by inserting one or more of the claws of said hook, into whichever, or as many of the loops in or on the tape as may be necessary to produce the desired result." Both Knight's and Carr's hooks create pleats or folds because the distance between the pockets in the tape is greater than the distance between the hooks.

The question is, then, whether Mrs. Loudon's patent shows invention over the prior art.[1] She says that it does: that she has produced a "novel combination." Her device differs from both Knight and Carr in that the back or shank of the hook is lower than the top of the prong. But this development is shown as early as Nachmann (No. 763,780), who specifically notes its utility in causing the curtain to conceal the hanging device behind it. Appellee's prongs are all in a single plane, an arrangement which is found in Carr and Steiner (No. 2,012,-734). Appellee's prong supports the top

---

1. On this point, Consolidated in effect concedes that it has the burden of proof.

of a closed pocket, which Carr clearly does not teach and Knight apparently does not. However, Charlton (British Patent No. 151,108) has a single prong, to be inserted in a tape, supporting the closed top of the tube in the tape. And French (No. 2,183,188) specifically states that some of his hooks for use with heading tape are "adapted to engage the furthest parts of the hook tubes." Appellee describes the prongs of her device as being "inverted U-shaped." While we doubt that invention could reside in this modification of styling, it is enough to point out that this same design was employed by Charlton (British Patent No. 151,108).

■ "The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention." Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008 (1938). And in Great Atlantic & Pacific Tea Co. v. Supermarket Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950), the Court said: "The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable." Like the A. & P. case, the case now at bar "is wanting in any unusual or surprising consequences from the unification of the elements here concerned," and there is nothing to indicate that the District Court "scrutinized the claims in the light of this rather severe test." Ibid. Again, to paraphrase A. & P., we note that neither the Board of Patent Appeals nor the District Court has made "any finding that old elements which made up this device perform any

additional or different function in the combination than they perform out of it." Ibid.[2]

■ The District Court's finding as to validity states only that "Plaintiff has failed to carry its burden of proving that the patent in suit is invalid." Nor does the decision of the Board of Patent Appeals offer anything to indicate wherein the aggregation there approved rises to the level of patentable invention. Indeed the Board appears to have applied standards contrary to those laid down by the courts. The conclusion of the Board's opinion notes that Mrs. Loudon's device "facilitates the curtain hanging operation and while, in our opinion, * * * [her] contribution is not great, we think that in view of the fact that the art here involved is highly developed, patentability of the claim is not negatived by the cited patents." In the first place, "A mere advance in efficiency and utility is not enough to convert a non-inventive aggregation into a patentable combination." Kwikset Locks, Inc., v. Hillgren, 210 F.2d 483, 486 (9th Cir., 1954). Secondly, the Board has misconstrued the significance of the crowded state of the art. On the contrary, "to make sure that a monopoly is not granted for mere perfection of workmanship, the courts closely scrutinize claims to combinations for improvements in a crowded art." Shaffer v. Armer, 184 F.2d 303, 307 (10th Cir., 1950).

■ We think it is clear that Mrs. Loudon's patent is invalid.[3] The A. & P. decision seems to us to be controlling. As was there said: "We set aside no finding of fact as to invention, for none has been made * * *. The defect that we find in this judgment is that a standard of invention appears to have been used that is less exacting than that required where a combination is made

2. Neither party urges that the new patent act, 35 U.S.C. § 101 et seq. (1952), alters the rules announced in Great Atlantic & Pacific Tea Co. v. Supermarket Corp., supra; furthermore, several courts have held that it does not. E.g., Interstate Rubber Products Corp. v. Radiator Specialty Co., 214 F.2d 546, 548 (4th Cir.

1954); General Motors Corp. v. Estate Stove Co., 203 F.2d 912, 918 (6th Cir. 1953).

3. We do not reach the issue of infringement vel non, and express no opinion on whether Consolidated had the burden of proof in that regard.

up entirely of old components. It is on this ground that the judgment below is reversed." 340 U.S. at pages 153–154, 71 S.Ct. at pages 130, 131, 95 L.Ed. 162.

For these reasons, the judgment of the District Court will be

Reversed and the cause remanded with directions to enter a judgment declaring that defendant-appellee's patent is invalid, and granting such further relief to plaintiff-appellant as may appear to the court to be just and proper.