124

Patent Appeals No. 5009.

Court of Customs and Patent Appeals.
May 24, 1945.

Donald M. Wight, of Washington, D. C., for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

The Board of Appeals of the United States Patent Office affirmed the action of the Primary Examiner in rejecting all of appellant's claims, 1 to 11, inclusive, and 13 to 15, inclusive, in his application for a patent for a method of treating and packaging dried fruit products. The applicant here appeals from the decision of the board and in this court withdraws the appeal as to claims 1, 2, 3, 8, and 10. We treat his so-called withdrawal as a motion to dismiss the appeal as to these claims, and the same will be granted. That leaves for our consideration claims 4 to 7, inclusive, 9, 11, and 13 to 15, inclusive, of which claim 15 is illustrative, although certain features of other claims will be referred to hereinafter. Claim 15 reads: "15. A method of treating and packaging dried fruit products in liquid, which comprises filling fruit while hot with hot liquid into a flexible, moisture-resistant, airtight package having heat-sealing characteristics, and sealing the package, the temperature of the fruit and the liquid being high enough to effect sterilization without supplemental application of heat for sterilizing purposes."

The claims were rejected upon the prior art, the examiner citing the following: Pape 1,976,961 Oct. 16, 1934; Schaefle 2,134,060 Oct. 25, 1938; Wilbur 2,143,903 Jan. 17, 1939; Bensel 2,231,791 Feb. 11, 1941; Cruess "Home Canning" pages 5, 25, and 31, University of Calif. Circular 276, March 1924.

Claim 13 was additionally rejected as being, in part, functional or indefinite.

The board held that in view of the prior art cited, the appealed claims defined nothing inventive. Its decision is in part as follows:

"With the brief there was filed an affidavit tending to show that the product treated in accordance with this application has enjoyed much commercial success. This feature does not appear to have been questioned at any time and it was therefore thought unnecessary to refer the same to the examiner for comment.

"The appealed claims relate to a method of packaging dried fruit, such as prunes, by cooking the fruit at a temperature near 212° F. until the fruit had reached a desired condition. The fruit is then placed in a sterile container and the voids between the fruit are filled with the liquid in which the fruit has been cooked. The lid is then applied and screwed down or clamped until an air tight seal has been obtained. After this the containers may be inverted for the

purpose of determining whether or not the lid is tightly sealed.

"As stated above a number of the claims are specific to the use of a flexible container which is sealed immediately after filling but when a container of this type is used inversion apparently is not necessary.

"The main reference relied upon is the article by Cruess. This reference describes the steps employed in hot packing fruits and vegetables which differs but little from that recited in the claims. This reference makes certain vague reference to further sterilization after the cover has been applied but this appears to be merely a matter of choice. The hot packing method is perhaps the oldest method employed in canning fruit and the like in households and it has been the common practice for many years to place the glass containers in a pan containing hot water and bringing such water up to the boiling point so as to sterilize and also to prevent the glass jars from cracking when the hot material from the preserving kettle is placed in said jars. It has also been the common practice to place the lids within the hot water and as soon as the jars are filled these lids are screwed or clamped on the same. Since the cooking of the fruit and the heating of the jars produce a sterile condition it is not seen just why further sterilization should be resorted to.

"The patent to Bensel discloses a process of preserving food in flexible containers of the type contemplated here. It is stated in the description that the material is partially cooked in an open pot and is then placed in the container, after which it is hermetically sealed. The material then may be placed in a cooking container such as is shown in Fig. 3 and subjected to further cooking. Whether or not liquid is added to fill the voids is deemed to be immaterial since it is quite common to fill the containers with liquid after the pulp has been placed therein. The other references do not need to be discussed since they are relied upon solely for the purpose of showing that it is old to prepare and preserve cooked dried prunes.

"We are unable to see wherein appellant has applied any new principle in his process or wherein there are any details which were not previously known and we must therefore hold that the claims on appeal are substantially met by the prior art of record."

Appellant states that his invention, while relating to the treatment of dried fruits in general, is particularly useful in connection with the treatment and packaging of dried prunes in liquid or syrup "so as to produce a ready-to-serve wet-pack product". His method, which is in part indicated by the quoted claim, is to first wash the dried prunes and then subject them to a short preliminary cooking, which is done by boiling the same so that each prune is uniformly heated. This brings about a swelling of the fruit, but the cooking is not carried on to the extent where much, if any, of the nutritive constituents are lost. The prunes are then removed from the cooking liquid and while at sterilizing temperature are placed in what appellant describes as flexible containers, in which they are sealed. Since the prunes are swollen, some of the liquid will not be included in the flexible container. Sugar or syrup is added as desired, and the containers are sealed while the ingredients are sufficiently hot to require no further sterilization. Much stress is laid by appellant upon the fact that great skill is required to control the amount of liquid added to the expanded prunes, which may determine whether the package is regarded as a heavy or solid pack or as a light pack, the latter containing more liquid than the former. He applies no heat after the containers are sealed.

While some of the claims speak of the package as a "flexible, moisture-resistant, airtight package", the specification often refers to it as a "bag". It is pointed out therein that the desired flexibility may be obtained by the use of a transparent rubber product, such as "Pliofilm", or a laminated cellulose sheet product, such as "Cellophane". It is further stated in appellant's application that dried fruits may be packed, in accordance with his method, in tin or glass. The Bensel patent discloses the use of appellant's so-called flexible container.

The pertinent references, we think, have been sufficiently discussed in the board's opinion, and it would not be useful to repeat the same here. We, agreeable to the holding of the tribunals below, conclude that appellant has applied no new principle in his process which was not previously known or which could not have been applied without the exercise of the inventive faculty. We agree with the Solicitor for the Patent Office, who asserts:

"Obviously, in view of that disclosure of this patent [Bensel] it would not require invention to place prunes in such flexible containers to treat them by the well-known "hot-pack" method of canning. At this point it may be noted that it was not new to treat dried prunes by processes which involve the treating of such prunes in hot water.

"Again, it was not new to sterilize containers for fruits by heating them with hot water and pouring the hot fruit and syrup into the containers and sealing the containers without further sterilization. It was known that it was desirable to invert the sealed containers to ascertain whether there was any leakage and this would cause the hot syrup to come in contact with every part of the container and consequently ensure sterilization."

And, we also agree with the board in concluding that the hot-pack method is perhaps the oldest method employed in canning fruit.

Claim 5, unlike claim 15, supra, calls for, after sterilization, "subsequently again moving the filled package to cause contact of the liquid with all of the fruit in the package to obtain uniform conditions of sugar diffusion from the fruit and liquid absorption by the fruit." Claims 4 and 6 have substantially the same limitation. It is clear that these limitations alone would not lend patentability to such a claim as No. 15, because it would not require invention to conclude that one should diffuse the juice containing the sugar evenly through the package.

Claim 9 calls for "the volume of liquid being substantially less than the volume of fruit". It is a matter of common knowledge that this may occur in any process of canning fruits, dried or otherwise. This limitation does not lend patentability to the claim over the prior art cited.

Claim 11 calls for "the proportion of water to fruit being not over 25% by volume." Claim 13 provides, "the amount of added liquid being controlled to approximate the amount of such liquid which will be taken up by the fruit after filling into the container." The 25 per cent proportion of water is not shown to be critical, and it certainly does not involve invention over the prior art to insert only such amount of liquid as will be taken up by the fruit in the container.

Affidavits of commercial success were presented to and considered by the board. In close cases the manner in which the public receives an alleged invention is sometimes persuasive that invention existed in bringing about an admitted improvement. Commercial success, however, often flows from sources other than that which is resultant from invention. In re Jannell, 120 F.2d 1012, 28 C.C.P.A., Patents, 1262, 50 U.S.P.Q. 51; In re Mattison, 110 F.2d 675, 27 C.C.P.A., Patents, 1076, 45 U.S.P.Q. 163; In re Kluter, 92 F.2d 906, 25 C.C.P.A., Patents, 730, 35 U.S.P.Q. 460; In re Jobst, 37 F.2d 751, 17 C.C.P.A., Patents, 829, 4 U.S.P.Q. 431. In the instant case it is clear to us that regardless of any commercial success which may have followed the employment of appellant's method, he did nothing more than that which those skilled in the art might be expected to do.

The Board of Appeals, therefore, properly affirmed the action of the examiner in denying the appealed claims. As to claims 1, 2, 3, 8, and 10, the appeal is dismissed; and as to all the other claims, the decision of the board is affirmed.

Affirmed.